UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **ARSHON HARPER,** individually and on behalf of all others similarly situated,<br>Plaintiffs,<br>vs.<br>**SIRIUS XM RADIO, LLC,**<br>Defendant. | **2:25-CV-12403-TGB-APP**<br>TERRENCE G. BERG<br>**ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS (ECF NO. 14)** |

Plaintiff Arshon Harper, an African American male, brings a class-action lawsuit against Defendant Sirius XM Radio, LLC ("Sirius"), alleging employment discrimination in violation of Title VII and § 1981. Complaint, ECF No. 1, PageID.1. Defendant filed a Motion for Judgment on the Pleadings under Fed. R. Civ. P. 12(b)(6) and 12(c), which has been fully briefed. *See* ECF Nos. 14, 17, & 18. Upon review of the parties' filings, the Court concludes oral argument will not aid in the resolution of this matter. Accordingly, the Court will resolve the present motion on the briefs. *See* E.D. Mich. L.R. 7.1(f)(2).

For the following reasons, the Court will **GRANT** Defendant's Motion for Judgment on the Pleadings.

## I. BACKGROUND

Defendant Sirius XM is a provider of satellite radio and other streaming services. ECF No. 1, PageID.1. Plaintiff's Complaint alleges

that Defendant utilizes algorithmic decisionmaking tools provided by third-party vendor iCIMS in its hiring process, including artificial intelligence ("AI") and machine learning ("ML"), to screen and reject job applicants in a manner that intentionally and disproportionately discriminates against African Americans. *Id.* According to Plaintiff, Defendant uses iCIMS's Applicant Tracking System ("ATS") and associated AI/ML tools, such as candidate-matching and shortlisting features, to manage applications for employment. *Id.* Plaintiff alleges upon information and belief that the iCIMS AI/ML tools used by Sirius XM evaluate applicants using data points that act as proxies for race, such as educational institutions, employment history, and zip codes, resulting in the disproportionate rejection of qualified African American candidates in comparison to similarly qualified non-African American candidates. *Id.* at PageID.1–2.

Plaintiff Harper is an African American male from Detroit, Michigan, with a bachelor's degree in Business Administration from Wayne State University. *Id.* at PageID.3. Plaintiff describes himself as a "results-driven business professional with over a decade of experience in technical support, network engineering, data analysis, and customer service." *Id.* Plaintiff has previously worked as an IT Support Specialist at Wayne State University and a part-time Promotion Coordinator for Audacy Radio, Inc. *Id.* at PageID.3–4. He was working as a Transportation Passenger Data Collector at the Detroit Department of

Public Transportation at the time of the Complaint's filing. *Id*. Plaintiff's Complaint states that his professional experience in IT and administration, alongside his significant programming and technical skills, make him a highly qualified candidate for employment in IT, technical support, and software engineering. *Id*. at PageID.4.

Plaintiff pleads in his Complaint that from November 2023 to November 2024, he applied for "approximately 150 positions with Sirius XM, including IT Desktop Support, Software Engineer, and Technical Support Specialist, for which he was minimally qualified or over-qualified based on his education and professional experience." *Id*. at PageID.4–5. Despite his qualifications, Plaintiff alleges that all but one of his applications were rejected before the interview stage. *Id*. at PageID.5. Plaintiff alleges that in November or December of 2023, he received a 30-minute interview for a role in IT Desktop Support, but was rejected post-interview. *Id*. He alleges that during the interview process, a Sirius XM employee questioned his usage of multiple email addresses for his applications, and Plaintiff explained that he had done so in an attempt to avoid "suspected algorithmic penalties for repeat applications." *Id*.

Plaintiff filed a charge of race discrimination against Sirius XM with the Equal Employment Opportunity Commission ("EEOC") on November 22, 2024. *Id*. at PageID.2. In the EEOC Charge, Plaintiff similarly states that "[t]he only way I was able to obtain an interview was

because after realizing that I was being potentially penalized for submitting numerous applications, I began using different email addresses from multiple email accounts that I created for the express purpose of trying to obtain employment." ECF No. 14-3, PageID.110. Notably, Plaintiff does not allege that any of the email addresses he used to apply correspond with changes to his demographic information. Instead, Plaintiff suspects race discrimination because:

> As part of the employment process Siriux XM requires that I and other Black applicants to surrender their personnel information, employment history, and other factors to iCIMS's proprietary Large Language Models("LLMs") and AI for screening and/or advancement in the employment process.

*Id.* at PageID.111. Plaintiff thus alleged that "[b]y funneling my applications and the applications of others similarly situated through iCIMS's software, employers have designated iCIMS and their AI to be the exclusive agent for employment opportunities." *Id.* The EEOC declined to proceed further with its investigation and issued Plaintiff a right-to-sue letter on May 6, 2025. ECF No. 1, PageID.13.

On August 4, 2025, he filed the instant federal lawsuit alleging race discrimination in Sirius's hiring process, specifically through its alleged use of AI-powered recruiting tools integrated into the ATS that Defendant uses to screen applications. ECF No. 1, PageID.6. Plaintiff supports this allegation through evidence of his own disproportionately high rate of rejection from employment at Sirius. *Id.* Plaintiff alleges that

these AI/ML features cause disparate impact and intentional discrimination and have caused Plaintiff and a similarly situated class of individuals both economic and non-economic harm. *Id.* at PageID.6–7.

Defendant filed a Motion for Judgment on the Pleadings, seeking dismissal of Plaintiff's Complaint under Fed. R. Civ. P. 12(c) and 12(b)(6) for failure to state a claim, and moved to dismiss or strike Plaintiff's class allegations. ECF No. 14. Plaintiff filed a Response in Opposition (ECF No. 17), and Defendant filed a Reply in Support (ECF No. 18).

## II. LEGAL STANDARD

After the pleadings are closed, but early enough so as not to delay trial, either party to a lawsuit may move for judgment on the pleadings. Fed. R. Civ. P. 12(c). A Rule 12(c) motion is granted when the movant is entitled to judgment as a matter of law based on the Complaint's well-pleaded allegations and undisputed facts. *See Paskvan v. City of Cleveland Civ. Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991). Courts assess Rule 12(c) motions "using the same standard that applies to a review of a motion to dismiss under Rule 12(b)(6)." *Moderwell v. Cuyahoga Cnty.*, 997 F.3d 653, 659 (6th Cir. 2021).

Under Fed. R. Civ. P. 12(b)(6), a Complaint must contain sufficient factual matter to state a claim that is plausible on its face, and which allows a court to reasonably infer that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atlantic*

*Corp. v. Twombly*, 550 U.S. 544 (2007). Plaintiffs "must allege enough facts to make it plausible that the defendant bears legal liability"—not merely possible liability. *Agema v. City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016). "[A]ll well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 526 (6th Cir. 2006). Courts "must construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of [her] claim that would entitle [her] to relief." *Id.* But a court "need not accept as true legal conclusions or unwarranted factual inferences." *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999). Likewise, bare assertions of legal conclusions are insufficient; instead, the "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Scheid*, 859 F.2d at 436. "Conclusory allegations or legal conclusions masquerading as factual allegations" are insufficient. *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2009).

A plaintiff need not prove every element of their case to survive a motion to dismiss. *Keys v. Humana, Inc.*, 684 F.3d 605, 609–10 (6th Cir. 2012); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510, 122 S. Ct.

992, 152 L. Ed. 2d 1 (2002) ("The prima facie case under *McDonnell Douglas* ... is an evidentiary standard, not a pleading requirement."). Yet the plaintiff must still allege sufficient "factual content" from which a court, informed by its "judicial experience and common sense," could "draw the reasonable inference," that the plaintiff was discriminated against because of his or her race. *Keys*, 684 F.3d at 610 (quoting *Iqbal*, 556 U.S. at 678); *accord Evans v. Hillman Grp., Inc.*, No. 20-41, 2021 U.S. Dist. LEXIS 56373, at *8 (S.D. Ohio Mar. 25, 2021); *see also HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 613 (6th Cir. 2012) ("A complaint that includes only conclusory allegations of discriminatory intent without supporting factual allegations does not sufficiently show entitlement to relief.").

## III. DISCUSSION

### A. Consideration of Defendant's EEOC Exhibits at the Pleadings Stage

Before reaching the merits of Defendant's motion, the Court will first address whether Exhibits 2 & 3 attached to Defendants motion, ECF No. 14-3, EEOC Charge of Discrimination ("EEOC Charge") & 14-4, Position Statement ("EEOC Statement"), may be considered at the pleadings stage. Defendant asserts that its exhibits may be considered as part of its motion "[b]ecause they are referenced in the Complaint and are essential to its claims . . . ." ECF No. 14, PageID.74 n.3 (citing *Ayers*

*v. Enviro-Clean Servs.*, No. 20-1628, 2021 U.S. App. LEXIS 13052, at *6 (6th Cir. April 30, 2021).

Plaintiff disagrees, arguing that (1) the four corners of the complaint do not extend to the EEOC Charge and Statement and (2) the EEOC Statement in particular is offered for its truth, contradicts Plaintiff's well-pleaded facts, and thus attacks the veracity of Plaintiff's well-pleaded complaint. At most, Plaintiff argues, the EEOC Statement merely shows that Defendant held a certain position—that "Sirius XM does not, nor has it ever, used iCIMS or any other AI/Machine Learning tool in the hiring process"—, not that the Statement was "true." Plaintiff's Response to Defendant's Motion ("Plaintiff's Response"), ECF No. 17, PageID.192–94. Defendant maintains that it previously communicated to Plaintiff that it does not use AI—initially during the EEOC process, and then through Plaintiff's counsel—at the commencement of this litigation during what would be an encouraged "meet and confer," *see* ECF No. 14, PageID.73 n.1, PageID.78 & n.4, under this Courts local rules. *See* E.D. Mich. LR 7.1.

In ruling on a Rule 12(c) motion, a court may "consider documents attached to, incorporated by or referred to in the pleadings." *Bucciarelli v. Nationwide Mut. Ins. Co.*, 662 F. Supp. 2d 809, 814 (E.D. Mich. Aug. 26, 2009) (Murphy, J.). "If, on a motion under Rule . . . 12(c), matters outside the pleadings are presented to and not excluded by the court, the

motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). However, "Rule 12(d) does not empower a responding party to unilaterally convert a Rule 12 motion by attempting to inject factual material into the record." *Encana Oil & Gas, Inc. v. Zaremba Fam. Farms, Inc.*, No. 12-369, 2013 WL 239341, at *2 (W.D. Mich. Jan. 22, 2013).

Other districts in the Sixth Circuit have found that "EEOC charges and related documents, including right to sue letters, are public records of which the Court may take judicial notice in ruling on a motion to dismiss without having to convert the motion into one for summary judgment." *Kovac v. Superior Dairy, Inc.*, 930 F. Supp. 2d 857, 862–63 (N.D. Ohio 2013); *see also Caplinger v. Uranium Disposition Servs., LLC*, No. 08-548, 2009 WL 367407, at *2 (S.D. Ohio Feb. 11, 2009) (holding that, in support of a motion to dismiss, a court views public records such as documents filed with the EEOC without converting the motion to a motion for summary judgment); *Rhea v. Dollar Tree Stores, Inc.*, 395 F. Supp. 2d 696, 703 (W.D. Tenn. 2005) (finding EEOC charge to be part of the public record for purposes of a motion to dismiss).

Plaintiff's Complaint directly references both the EEOC Charge and Notice of Right to Sue, ECF No. 1, PageID.2, ¶ 3–4, and both are essential for Plaintiff's suit to move forward. *See Barnett-Morgan v. Inverness Techs., Inc.*, No. 25-5669, 2026 U.S. App. LEXIS 16849, at *21

(6th Cir. June 8, 2026) (quoting *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010) ("[A] Title VII plaintiff cannot bring claims in a lawsuit that were not included in [their] EEOC charge."). This is because the charge puts both the employer and "'the EEOC on notice' that the employee may have suffered the harm alleged," *id.* at *21 (quoting *Milczak v. Gen. Motors, LLC*, 102 F.4th 772, 782 (6th Cir. 2024), and it "allows the employer an opportunity to settle the dispute through conference, conciliation, and persuasion' before a suit is filed." *Id.* (quoting *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010)).

But Defendant's Position Statement is not required for the Court to comprehend Plaintiff's case, and is not properly considered on a motion to dismiss. The Court therefore excludes the EEOC Statement and declines to exercise its discretion to convert the motion to one for summary judgment. *See Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010) ("We review the district court's decision to convert a 12(b)(6) motion to dismiss into a motion for summary judgment for abuse of discretion."); *Shelby Cnty. Health Care Corp. v. S. Council of Indus. Workers Health & Welfare Trust Fund*, 203 F.3d 926, 931 (6th Cir. 2000) ("The district court did not abuse its discretion in sua sponte converting the Fund's motion to dismiss into a motion for summary judgment").

**B. Title VII and § 1981 Claims**

Plaintiff claims that in refusing to hire him because of his race, Defendants violated his legally protected right to make and enforce employment contracts in violation of 42 U.S.C. § 1981. "Section 1981 prohibits intentional race discrimination in the making and enforcing of contracts involving both public and private actors and provides a cause of action for both race-based employment discrimination and retaliation." *Crane v. Mary Free Bed Rehab. Hosp.*, No. 15-1358, 634 Fed. Appx. 518, 521(6th Cir. 2015) (citing 42 U.S.C. § 1981); *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 867–68 (6th Cir. 2001). To succeed under § 1981, "a plaintiff must initially plead and ultimately prove that, but for race, [she] would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of African American-Owned Media*, 589 U.S. 327, 341 (2020).

By contrast, a Title VII plaintiff claiming disparate treatment need only plead facts sufficient to show that race was a "motivating factor" for the adverse employment action to demonstrate a plausible theory for causation at the pleadings stage. *Id.* Nevertheless, a defendant can still avoid liability for damages later in the litigation by demonstrating that, despite race as a motivating factor, race was not a but-for cause of the adverse employment action, such as by showing an independent and adequate reason for the adverse action unrelated to race. *Id.* The

Supreme Court held in the above-cited case, that the "motivating factor" theory for causation is not available to claims under § 1981. *Id.* It thus follows that if a plaintiff fails to meet the lower "motivating factor" standard, it must also fail the higher "but for" standard.

The Sixth Circuit has held that "employment discrimination claims under 42 U.S.C. § 1981 and Title VII can be analyzed under the same legal framework." *Noble v. Brinker Int'l Inc.*, 391 F.3d 715, 720 (6th Cir. 2004) (citing *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 573 n.5 (6th Cir. 2000) ("The elements of [a] prima facie case as well as the allocations of the burden of proof are the same for employment claims stemming from Title VII and § 1981."); *see also Phillips v. Am. Red Cross Blood Servs.*, No. 20-01714, 2023 U.S. Dist. LEXIS 172378, at *7 n.5 (N.D. Ohio Sep. 27, 2023). Thus, the Court will proceed by the applying the Title VII analysis to both claims. [1]

### 1. Legal Framework

Title VII seeks to deter unlawful discrimination in the workplace, and thus prohibits an employer's ability to "discharge any individual, or otherwise to discriminate against any individual with respect to his

[1] The Court notes that the Supreme Court's holding in *Comcast* would only limit a viable § 1981 disparate treatment theory—explained below—under Title VII's framework, where the employer's motivation for taking adverse action is directly at issue. Otherwise, for the Court's purposes in the present case, Plaintiff's Title VII and § 1981 claims can be analyzed under the same legal framework.

compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1); *see also Noble v. Brinker Int'l, Inc.*, 391 F.3d 715, 720 (6th Cir. 2004).

Refusal to hire persons because of their race is one basis for bringing a Title VII discrimination claim. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002). The Supreme Court has recognized two distinct types of employment discrimination under Title VII: (1) "disparate treatment" and (2) "disparate impact." *Griggs v. Duke Power Co.*, 401 U.S. 424 (1971); *see also Waldon v. Cincinnati Pub. Sch.*, 941 F. Supp. 2d 884, 888 (S.D. Ohio Apr. 24, 2013). As explained below, Plaintiff has failed to plead sufficient factual allegations to state a claim for relief under either theory.

**a. Disparate Treatment**

For employment discrimination cases based on disparate treatment, "[t]he ultimate question . . . is whether the plaintiff was the victim of intentional discrimination." *Reeves*, 530 U.S. at 153; *accord Hicks*, 509 U.S. at 511; *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). The gravamen of a disparate treatment claim is that "similarly situated people have been treated differently" because of their membership in a protected group. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992).

To prevail, a plaintiff pursuing a disparate treatment claim must present "either direct or circumstantial evidence that would allow an inference of discriminatory intent." *Ross v. Pfizer, Inc.*, 375 F. App'x. 450, 453 (6th Cir. 2010). Direct evidence is something like "a smoking gun"; it "is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999).

Under Title VII, a plaintiff lacking "a smoking gun" to support their disparate treatment claim must eventually be able to prove a prima facie case of discrimination by demonstrating: "(1) she is part of a protected class; (2) she was qualified for the job; (3) she suffered an adverse employment decision; and (4) she was replaced by someone outside the protected class or was treated differently than similarly situated non-protected employees." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973); *see also Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 606 (6th Cir. 2019).

In this case, Plaintiff does not claim there is any direct evidence that Defendant discriminates on the basis of race in hiring, and so he must rely entirely on circumstantial evidence.

Defendant argues that Plaintiff does not plead any facts or circumstances that could support the inference that Defendant intentionally discriminates in hiring, but rather makes threadbare,

conclusory accusations. *See* ECF No. 14, PageID.77–83. Plaintiff argues that it need not prove its entire case in the pleadings, and that discovery will provide the evidence required to ultimately prove his case. ECF No. 17, PageID.173, 190–91. Further, Plaintiff argues that the fact that Defendant was capable of using and collecting race-related statistics coupled with Plaintiff's repeated rejections is enough to plausibly state a claim. *Id.* at PageID.179.

But Plaintiff's burden under Rule 12(c) and 12(b)(6) is not to provide facts sufficient to show that his allegations are *possible*—that Defendant was *capable* of making discriminatory screening decisions—but rather, Plaintiff must show his allegations that Defendant is doing so are *plausible*. *See Agema v. City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). In his complaint, Plaintiff proposes that Sirius uses AI/ML "to intentionally and disproportionately reject African-American applicants," and that this is "evidenced by Plaintiff's 99.3% rejection rate (149/150 applications) despite being qualified." Alone, Plaintiff's application being rejected after being offered an interview and not getting the job would not support any inference of discriminatory intent. Plaintiff does not seem to engage with this theory in his Response to Defendant's Motion, but rather focuses on the plausibility of Defendant's ATS resulting in Plaintiff's systemic rejection on the basis of

race. *See* ECF No. 17. Indeed, the term “disparate treatment” does not appear once in the Response.

Here, Plaintiff does not allege any facts that would indicate discriminatory intent, such as losing the position he interviewed for to a person from a non-protected class, or evidence indicating that other current employees or applicants have been rejected for advancement or in hiring decisions because they belong to a protected class, or that class was a motivating factor for treating them differently. Indeed, Plaintiff does not indicate any comparator class—similarly situated non-protected applicants or employees—from which the Court could infer disparate treatment. Therefore, the Court finds that Plaintiff has not pled sufficient facts to entitle him to relief under a disparate treatment theory. Thus, the only vehicle for relief that remains is through a disparate impact theory.

**b. Disparate Impact**

The second category of Title VII claims recognized by the Supreme Court, disparate impact claims, result from facially neutral employment practices that have a disproportionately negative effect on certain protected groups, and which cannot be justified by business necessity. *Int’l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335–36 n.15 (1977). “Title VII prohibits employment practices that are ‘fair in form but discriminatory in action.’” *Dunlap v. Tenn. Valley Auth.*, 519

F.3d 626, 629 (6th Cir. 2008) (quoting *Griggs v. Duke Power Co*., 401 U.S. 424, 431, 91 S. Ct. 849, 28 L. Ed. 2d 158 (1971)).

Unlike disparate treatment, disparate impact does not require a showing of discriminatory motive, because the claim is results based—often relying on statistical evidence of systematic discrimination. *Id.*; *see also, e.g.*, *Griggs v. Duke Power Co.*, 401 U.S. 424 (1971); *Waldon v. Cincinnati Pub. Sch.*, 941 F. Supp. 2d 884, 888 (S.D. Ohio Apr. 24, 2013). "To establish a prima facie case of discrimination on a disparate-impact theory, a plaintiff must 1) identify a specific employment practice to be challenged and 2) prove through relevant statistical analysis that the challenged practice has an adverse impact on a protected group." *Tartt v. Wilson County*, 592 Fed. Appx. 441, 447 (6th Cir. 2014) (citing *Dunlap v. Tenn. Valley Auth.*, 519 F.3d 626, 629 (6th Cir. 2008). It follows that the challenged policy or practice must have some causal relationship to the adverse employment action. *See Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 542 (2015) (a claim "must fail if the plaintiff cannot point to a defendant's policy or practice *causing that disparity*") (emphasis added).

Both disparate-treatment and disparate-impact theories require a causal connection between the employment action and the protected characteristic. *Grace Chen v. Hillsdale Coll.*, 2024 U.S. Dist. LEXIS 247928, *28–29 (W.D. Mich 2024) (finding that the plaintiffs' own experiences are insufficient to show disparate impact if the complaint

does not cite any statistics showing that the defendant's practices and policies causally burden a protected class).

Defendant argues that Plaintiff's personal experiences are not enough on their own to establish disparate impact. Defendants add further that it has never used any type of AI/ML during the hiring process, and that it has made Plaintiff aware of this fact on multiple occasions, including through Plaintiff's counsel. ECF No. 17, PageID.73 n.1.

Plaintiff argues that his experience of "disproportionate" rejections over 150 applications, coupled with Defendant's capacity for using collected data in a discriminatory manner is enough to state a claim. ECF No. 17, PageID.17–20. Further, Plaintiff argues that the parties' contention over whether Defendant uses AI/ML and whether it is used in a discriminatory manner establishes a genuine issue of material fact for discovery to elucidate. *Id.* at PageID.21.

Whether there is a genuine issue of material fact over any *factual* contention is immaterial for answering whether the complaint is *legally* sufficient. At this stage, the Court accepts all of Plaintiff's not-unreasonable facts as true; Plaintiff need only provide enough of such facts to plausibly support his legal conclusions. The problem here is that Plaintiff has not made this showing.

Even assuming that Defendant uses AI/ML in the hiring process, Plaintiff has not pleaded factual allegations sufficient to explain how

AI/ML could have been used to discriminate against him on the basis of race. Plaintiff does not provide *any* comparator class from which to gauge whether an impact was disparate, or *de minimis*—Plaintiff pleads disparate impact without showing that any disparity exists. Nor does Plaintiff identify *any* other members of a class who have had similar experiences. As in *Grace Chen*, individual experience—even repeated—is not enough to show a disparate impact on a *class* of individuals. *Grace Chen v. Hillsdale Coll.*, No. 23-1129, 2024 U.S. Dist. LEXIS 247928, at *28–29 (W.D. Mich 2024) (finding plaintiffs' own experiences insufficient to show disparate impact under ELCRA if the complaint does not cite any statistics showing that defendant's practices and policies *causally* burden a protected class).

Plaintiff's argument that his personal rejection rate coupled with Defendant's alleged ability to collect and enable the use of demographic data should be enough to say it is plausible that Defendant used racial characteristics or indicators to discriminate against him. ECF No. 17, PageID.6–8, 13. However, data collection is not the same thing as data discrimination. In fact, data collection can be an essential tool for a company to ensure its otherwise neutral policies and practices *do not* disproportionately disadvantage applicants based on a protected class status. If that is the case here, then subjecting defendants to litigation for taking steps to prevent discrimination would turn the logic of Title VII on its head.

Here, Plaintiff does not allege how or whether the AI/ML collected data about him that was racial in nature or how it impacted his hiring decision. No facts are included regarding any other applicants or employees that might suggest a disparate impact. Therefore, Plaintiff fails to state an employment discrimination claim on a disparate impact theory.

Because Plaintiff has failed to plead facts sufficient to demonstrate intentional discrimination, disparate impact, or a causal connection between the allegedly discriminatory conduct and an adverse employment outcome, the Court will grant Defendant's motion.

**C. Class Action**

Because Plaintiff has failed to plead sufficient facts to survive Rule 12(c), the Court will not address Plaintiff's class claims.

**IV. CONCLUSION**

For the foregoing reasons, Defendant's Motion for Judgment on the Pleadings (ECF No. 14) is **GRANTED**.

It is **HEREBY ORDERED** that Plaintiff's complaint be **DIMISSED WITHOUT PREJUDICE**.

**SO ORDERED**.

Dated: September 30, 2026

/s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT COURT